# JAMES KOUSOUROS
### ATTORNEY AT LAW

260 Madison Avenue, 22nd floor • New York, NY 10016
212•532•1934 / 212•532•1939 fax
E-mail: James@kousouroslaw.com

JAMES KOUSOUROS
FOUNDER & PRINCIPAL

ERIC GROSSFELD
ASSOCIATE

EMMA J. COLE
LEGAL ASSISTANT

June 3, 2020

**BY ECF**                                                   [Endorsement on page 5.]

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
New York, NY 10007

      Re:    *United States v. White*, 17-cr-431
             Motion for Compassionate Release in Light of the COVID-19 Pandemic

Dear Judge Berman:

      This office represents Defendant Aundray White in the above-captioned case. On December 17, 2018, the Court sentenced Mr. White to 130 months of incarceration. Mr. White remains incarcerated at FCI Fort Dix. The BOP projects Mr. White's release date to be October 6, 2026.[1]

      We write now to respectfully request the Court grant Mr. White First Step Act relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) – specifically, a reduction of his sentence to time served and a modification of his conditions of supervised release to include an additional period of home incarceration equal to the amount of time remaining in his prison sentence. We respectfully submit that the threat COVID-19 faces to Mr. White, who suffers from hypertension,[2] presents an "extraordinary and compelling reason[]" that "warrant[s] such [a] reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Upon release, Mr. White's fiancé, Latisha Charles, will transport Mr. White to their home in Freeport, New York. Ms. Charles will provide financial support until Mr. White is able to access his monthly pension. Ms. Charles will also add Mr. White to her health insurance plan.

      **I.**    **The COVID-19 Pandemic Compels Mr. White's Reduction in Sentence**

      "Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions … in combination with the increased risks of COVID-19 in prisons constitute 'extraordinary and compelling reasons' warranting relief. *United States v. Williams*, No. 3:17-CR-121-(VAB)-1, 2020 WL 1974372, at *3 (D. Conn. Apr. 24, 2020) (granting motion for compassionate release for defendant, incarcerated at FCI Fort Dix, suffering from, *inter alia*, hypertension).

---

[1] *See* Federal Bureau of Prisons, *Find a Prisoner*, https://www.bop.gov/inmateloc/.
[2] *See* Medical Records, Exhibit A. Mr. White also has a history of childhood asthma and was prescribed an inhaler as an adult. Medical records to this effect are presently unavailable.

"Individuals in carceral settings are at a 'significantly higher' risk of spreading infectious diseases." *Coronel v. Decker*, No. 20-cv-2472 (AJN), 2020 WL 1487274, at *3 (S.D.N.Y. Mar. 27, 2020); *accord United States v. Davis,* 2020 WL 1529158, at *4 (D. Md. Mar. 30, 2020) ("The inability to practice social distancing in jails makes 'transmission of COVID-19 more likely.'"); *United States v. Harris*, 2020 WL 1482342, at *1 (D.D.C. Mar. 26, 2020) ("The risk of the spread of the virus in the jail is palpable...."); *Basank v. Decker*, No. 20-cv-2518 (AT), 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020) ("The risk of contracting COVID-19 in tightly-confined spaces, especially jails, is now exceedingly obvious."); *United States v. Ramos*, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020) ("[I]t is not possible for a medically vulnerable inmate ... to isolate himself in [an] institutional setting as recommended by the CDC....").

"Prisons are tinderboxes for infectious disease. The question whether the government can protect inmates from COVID-19 is being reexamined every day as outbreaks continue to emerge and new testing efforts reveal that the rate of infection in many correctional facilities is far higher than previously imagined." *United States v. Pabon*, No. CR 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020); *see also Malam v. Adducci*, 5:20-cv-JEL-APP, ECF No. 68, at 36 (E.D. Mich. May 12, 2020) ("COVID-19 does not respect prison walls. The raging global pandemic outside of Calhoun County Correctional Facility and a confirmed case within the facility pose a serious risk to those inside.").

FCI Fort Dix is not immune to the pandemic that is spreading unabated through the nation's prison system. Indeed, it is "'speeding toward a public health catastrophe.'"[3] On May 4, 2020, the ACLU filed a lawsuit against the BOP, seeking a temporary enlargement of custody or bail pending habeas corpus for medically vulnerable inmates at FCI Fort Dix.[4] According to the complaint,

> The conditions at Fort Dix pose a grave public health risk for the spread of COVID-19. This risk is substantially greater than the risk faced by the public – or even at many other federal prisons, given Fort Dix's design. Fort Dix is a low security facility with an adjacent minimum-security Camp. The main facility currently holds 2,700 people, and the Camp has, until recently, held approximately 230. Perversely, the design of Fort Dix means the fact that those confined at Fort Dix are designated as the least dangerous prisoners face heightened risk from COVID-19. Except for disciplinary and medical isolation, Fort Dix has *no* separate one-person housing cells.[5]

The complaint alleges that "BOP reported no current positive prisoners or staff as recently as April 3. On April 11, BOP still reported only six positives; just three weeks later, it reported 40. By its own account, even the BOP's *under-reported* numbers show the rate of infection spread at Fort Dix has been exponential[.]"[6] The complaint further alleges that "only a small minority of prisoners at Fort Dix have been tested, even those with symptoms. The BOP has not revealed the number of people in custody it has tested at Fort Dix, but from numerous prisoner reports it is

---

[3] Colleen O'Dea, "COVID-19 Horror Stories prompt ACLU-NJ to File for Temporary Release of Medically Fragile Prisoners," *NJ Spotlight* (May 6, 2020), at https://www.njspotlight.com/2020/05/covid-19-horror-stories-prompt-aclu-nj-to-file-for-temporary-release-of-medically-fragile-prisoners/ (quoting the Legal Director of ACLU-NJ).
[4] *Wragg v. Ortiz*, 1:20-cv-05496-RMB, ECF No. 1 (D.N.J. May 4, 2020).
[5] *Id*. at 30.
[6] *Id*. at 39 (emphasis added).

almost certainly fewer than 10%. This is consistent with testing data the BOP has been forced to divulge about its other prisons."[7]

As of June 3, 2020, the BOP reports that there are 19 "active cases" of COVID-19 among inmates at FCI Fort Dix.[8]

The court in *United States v. Williams*, in granting the release of a hypertensive defendant incarcerated at FCI Fort Dix, observed that the defendant "is unable to properly guard against infection while incarcerated," and specifically held: "On this record, it is clear: Mr. Williams's medical condition is serious, and he warrants protection from the risks of COVID-19, a risk that has been heightened by the outbreak of the pandemic at his current facility." *Williams*, 2020 WL 1974372, at *4.

Like the defendant in *Williams*, Mr. White is especially vulnerable. "According to a CDC report, nearly 90% of adult patients hospitalized with COVID-19 in the US had one or more underlying diseases, and out of those patients 49.7% of them had hypertension[.]" *United States v. Pabon*, No. CR 17-165-1, 2020 WL 2112265, at *1 (E.D. Pa. May 4, 2020) (quotation and citation omitted).

The First Step Act contemplates his release from custody.

## II.   Mr. White is Eligible for First Step Act Relief

"As of December 21, 2018, a court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) 'upon motion of the Director of the Bureau of Prisons;' or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1 (D. Conn. Mar. 19, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Mr. White submitted a compassionate release request to the BOP on May 3, 2020.[9] The BOP's failure to respond after thirty days vests the Court with jurisdiction to provide Mr. White First Step Act relief.

The relevant Sentencing Commission Policy Statement, U.S.S.G. § 1B1.13, provides that the Court may reduce a term of imprisonment if three conditions are met: (i) extraordinary and compelling reasons warrant the reduction, *id.* § 1B1.13(1)(A); (ii) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), *id.* § 1B1.13(2); and (iii) the reduction is consistent with this policy statement, *id.* § 1B1.13(3).

"Under the First Step Act, the reasons for reducing a sentence of imprisonment must be 'consistent with the applicable policy statements issued by the Sentencing Commission.' The

---

[7] *Id.* at 40-41.
[8] *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/.
[9] *See* BOP Receipt of Request, Exhibit B.

applicable policy statement permits a sentence reduction for reasons related to the defendant's advanced age, physical or mental infirmity, and exigent family circumstances." *United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *4 (D. Conn. Feb. 7, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(I)).

A modification is warranted here because of the threats the COVID-19 pandemic presents to Mr. White's health while he is incarcerated at FCI Fort Dix. *See United States v. Sawics*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (concluding that, because the defendant suffered from hypertension, he was vulnerable to COVID-19 and thus "the risk of serious illness or death that he faces in prison constitutes an extraordinary and compelling reason militating in favor of his release."); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) ("Mr. Scparta suffers from multiple medical issues that make him especially vulnerable to complications from COVID-19. Specifically, Mr. Scparta suffers from hypertension, sleep apnea, high blood pressure, and high cholesterol. The Centers for Disease Control has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19.")

Mr. White is not a danger to the community. Indeed, he has been "community cleared" by the BOP to work as a town driver. In that capacity, Mr. White transports other inmates to, *inter alia*, medical appointments, airports, and halfway houses.

A substitution of home confinement for the remaining portion of his sentence still satisfactorily addresses the § 3553(a) factors for sentencing. *See Williams*, 2020 WL 1974372, at *4 ("Extraordinary and compelling reasons warrant the reduction, and Mr. Williams will be on supervised release at home during the time he would have been incarcerated, addressing any concern as to his danger to any other person or the community."); *United States v. Echevarria*, No. 3:17-CR-44 (MPS), 2020 WL 2113604, at *3 (D. Conn. May 4, 2020) ("To protect the public, the Court will lengthen the period of supervised release to cover the remainder of what would have been his incarceration term[.]"); *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221, at *8 (E.D.N.Y. Apr. 17, 2020) ("For 23 months from the date of his release from prison, defendant Vincent Asaro shall be under 24-hour home incarceration to be enforced by location monitoring, using specific technology to be determined by the Probation Department.").

Notwithstanding the length of time remaining in his sentence, the Court should modify Mr. White's sentence to protect his physical health in the throes of this public health crisis. *See United States v. Park*, No. 16-CR-473 (RA), 2020 WL 1970603, at *6 (S.D.N.Y. Apr. 24, 2020) ("[I]n light of the gravity of her conduct, Ms. Park deserves to spend every day of the sentence that she received in prison. But as other judges across this country have rightly noted, 'we are not currently living under normal circumstances.' The Court fears that leaving Ms. Park any longer at FCI Danbury may convert a three-year prison sentence into a death sentence. And that the Court cannot allow.") (citation omitted; quoting *United States v. Gross*, No. 15-cr-769 (AJN), 2020 WL 1673244, at *3 (S.D.N.Y. Apr. 6, 2020)); *United States v. Pena*, No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (granting release of hypertensive defendant who pleaded guilty to Hobbs Act robbery and was incarcerated at FCI Fort Dix, noting "Mr. Pena's continued detention now poses him imminent danger of serious injury and death—a circumstance that the Court never considered when imposing its sentence. Having reconsidered the § 3553(a) factors,

the Court thus concludes that they entitle Mr. Pena to compassionate release."); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020) ("The Court sentenced Defendant to 60 months in prison; it did not sentence him to death or to incarceration that carries a significant risk of death. Defendant has demonstrated that extraordinary and compelling circumstances warrant compassionate release.")

Accordingly, we respectfully request that the Court issue an order reducing Mr. White's sentence to time served and modifying his conditions of supervised release to include an additional period of home incarceration equal to the amount of time currently remaining in his prison sentence.

Respectfully submitted,

_____/s/_____

James Kousouros, Esq.

cc:

    Andrew Chan
    Eli Mark

    Assistant United States Attorneys

---

Government to respond by 6/17/2020 with input from BOP.

SO ORDERED:
Date: 6/3/2020

*Richard M. Berman*
Richard M. Berman, U.S.D.J.