UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                  :
                                           :    17 Cr. 431 (RMB)
           - against -                     :
                                           :    **DECISION & ORDER**
AUNDRAY WHITE,                             :
                    Defendant.             :
------------------------------------------------------------x

This Decision & Order resolves Defendant Aundray White's "Second and Successive Emergency Motion to Modify His Sentence," dated November 23, 2020 and filed pro se ("Second Motion to Modify Sentence").[1] For the reasons stated below, White's motion is respectfully denied.[2]

On June 29, 2020, the Court denied White's first motion for compassionate release, which was dated June 3, 2020 and filed by defense counsel James Kousouros ("First Motion"). In denying White's First Motion, the Court found that: (i) White has hypertension but White's hypertension appears (medically) controlled; (ii) White poses a danger to the community; and (iii) a sentence reduction would fail to satisfy the purposes of sentencing as set forth at 18 U.S.C. § 3553(a). *See United States v. White*, 2020 WL 3545513, at *2-3 (S.D.N.Y. June 29, 2020).

I. **Background**

On April 23, 2018, White pleaded guilty to conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine. Apr. 23, 2018 Plea Hr'g Tr. at 15:18-22. White's Sentencing Guidelines range was 151 to 188 months; his offense level was 33; and his criminal history category was II. Dec. 17, 2018 Sentencing Tr. at 18:5-8. On December 17, 2018, the

---

[1] White also filed an "Emergency Motion for Bail Pending Resolution of the Second Motion to Modify Sentence," dated December 28, 2020, and supplemental letters, dated January 5, 2021 and January 12, 2021.

[2] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

Court sentenced White to 130 months' imprisonment followed by 5 years of supervised release. Dec. 17, 2018 Judgment.

White is incarcerated at FCI Fort Dix in New Jersey. See Gov't Second Opp. at 2; see also FCI Fort Dix, BOP, https://www.bop.gov/locations/institutions/ftd/. His projected release date is October 6, 2026. Gov't Second Opp. at 2. As of January 29, 2021, White had served 42 months of his 130-month sentence (32%). Id.

White claims that: (i) his hypertension is not well-controlled. Def. Second Mot. at 4; (ii) he is now infected with COVID-19. "[He] is not asymptomatic, and has experience[d] a number of symptoms that are directly linked to the deadly disease." Def. Second Reply at 2; (iii) "FCI Fort Dix . . . is currently . . . experiencing a massive coronavirus outbreak." Def. Second Mot. at 3; Jan. 5 & Jan. 12, 2021 Ltrs. at 1; and (iv) "this Court [should] immediately order him released on bail pending the final disposition of his emergency motion for compassionate release." See Def. Emergency Mot. for Bail at 1-2.

On January 12, 2021, the Government filed its second opposition, contending that: (i) White's BOP medical records show that his hypertension is "well-controlled." Gov't Second Opp. at 4; (ii) White has the COVID-19 virus. "According to his medical records and information from the BOP . . . [he] is currently asymptomatic, [and is] receiving daily symptom and temperature checks [from BOP personnel]." Id. at 2, 6; (iii) White poses a serious risk of danger to the community and compassionate release "would be inconsistent with the factors set forth in 18 U.S.C. § 3553(a)." Id. at 1, 7; and (iv) the Court should also deny White's motion for bail pending resolution of the motion. Id.

## II.   Legal Standard

Where a "[d]efendant is proceeding *pro se*, his submissions are 'construed liberally and interpreted to raise the strongest arguments that they suggest.'" *United States v. Moore*, 2020 WL 3428107, at *1 (S.D.N.Y. June 23, 2020) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

"Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies." *See United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020).

"A motion for reconsideration 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *United States v. Posner*, 2020 WL 7022500, at *1 (S.D.N.Y. Nov. 30, 2020) (quoting *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

United States Sentencing Commission policy statement U.S.S.G. § 1B1.13 provides that a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," and "the defendant is not a danger to the safety of any other person or to the community," and "the reduction is consistent with this policy statement."

"[I]n deciding a compassionate release motion brought directly by a prisoner . . . [t]he court [] looks to § 1B1.13 for guidance in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020). However, "a district court's discretion in this area – as in all sentencing matters – is broad." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). District courts are "free[] . . . to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.*

"[T]he Section 3553(a) factors and the danger [a defendant] poses to the community [can] override **any** extraordinary and compelling reasons justifying his release." *See United States v. Serrano*, 2020 WL 5259571, at *4 (S.D.N.Y. Sept. 3, 2020) (emphasis added); *United States v. Roney*, --- F. App'x ----, 2020 WL 6387844, at *1 (2d Cir. Nov. 2, 2020) ("Prior to reducing a defendant's term of imprisonment, . . . a district court must consider 'the factors set forth in section 3553(a)[.]'" (citation omitted)); *United States v. Romero*, 2020 WL 2490027, at *1 (S.D.N.Y. May 14, 2020) ("Even where [] extraordinary and compelling reasons are present, the defendant also must not be a danger to the community.").

3

III.   **Findings**

The Court's findings are as follows:

1. White's Second Motion contends that the Court erred in concluding that his hypertension is well-controlled. White states that: "any representation that [his] hypertension is well-controlled is a material misrepresentation, and the product of recording only the [blood pressure] readings that were acceptable to [BOP] Health Services." Def. Second Mot. at 4. But White has not provided any evidence to support this claim. Courts regularly rely on BOP medical records in considering compassionate release motions. *See, e.g.*, *United States v. Anton*, 2020 WL 3430187, at *2 (D. Conn. June 23, 2020) ("Although [defendant's] reply brief asserts that his hypertension is not well-controlled . . . , the medical records make clear that the BOP has been following his condition and treating it[.]"); *United States v. Mood*, 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) ("according to [defendant's] medical records, his . . . hypertension . . . ha[s] been carefully monitored by the Bureau of Prisons [] and well-managed").

2. White appears to be relitigating his First Motion regarding hypertension. Yet he fails to meet the strict standard for reconsideration. *See United States v. Gray*, 2021 WL 211539, at *1 (S.D.N.Y. Jan. 21, 2021) ("The Court construes [defendant's filing] to be a request for reconsideration" because it "raises . . . the same [] coronavirus-related concerns that the Court already rejected as insufficient when it denied [defendant's] [initial] motion for compassionate release."). White has pointed to no controlling decisions or facts that the Court overlooked that would alter its conclusion that his hypertension is "well-controlled." *United States v. Posner*, 2020 WL 7022500, at *1 (S.D.N.Y. Nov. 30, 2020); *see United States v. Rosario*, 2020 WL 7695707, at *2 (S.D.N.Y. Dec. 24, 2020).

3. White also appears to raise two new claims in his Second Motion. These include: (i) there is a "massive coronavirus outbreak at FCI Fort Dix"; and (ii) he currently has COVID-19 which puts him at risk of "death" if he remains at FCI Fort Dix. Def. Second Mot. at 3; Def. Second Reply at 1. These claims appear not to have been presented to the BOP or to the Warden of FCI Fort Dix and, therefore, have not been exhausted. *See United States v. Nwankwo*, 2020 WL 7335287, at *1 (S.D.N.Y.

Dec. 14, 2020) (where the court concluded that the defendant was required to exhaust his administrative remedies including his new claim of a "documented outbreak" of COVID-19); *see also United States v. Israel*, 2020 WL 5641187, at *5 (S.D.N.Y. Sept. 22, 2020) (where the court concluded that a defendant was required to exhaust his administrative remedies including his new claim that "he had [] contracted COVID-19").

4. With respect to White's claim regarding a COVID-19 outbreak at FCI Fort Dix, there appears to have been 789 inmates with active COVID-19 cases as of January 11, 2021. See Gov't Second Opp. at 5. It also appears that many of these inmates may have recovered from COVID-19 because, as of January 29, 2021, the BOP reports that "71 [] inmates [had] . . . active [COVID-19] cases"; "1 [] inmate" had died; and "1,424 [] inmates [had] recovered" from COVID-19, out of an inmate population of 2,723. COVID-19 Update, https://www.bop.gov/coronavirus/ (last visited Jan. 29, 2021); *see United States v. Sulik*, 2021 WL 232588, at *2 (E.D. Ky. Jan. 22, 2021) ("th[e] [BOP's] data indicates that the number of positive cases . . . at FCI Fort Dix . . . has decreased substantially since the filing of [defendant's] motion and that BOP officials are implementing measures to control the spread of the virus").

5. While White contends that "[he] is not asymptomatic," "[a]ccording to [White's] medical records and information from BOP, he is asymptomatic and does not have a fever." Def. Second Reply at 2; Gov't Second Opp. at 2. According to the Government, "BOP personnel are conducting daily symptom and temperature checks of the defendant." Gov't Second Opp. at 2.

6. White appears to be receiving appropriate medical treatment for his COVID-19 at FCI Fort Dix. In *United States v. Daugerdas*, 2020 WL 4931988 (S.D.N.Y. Aug. 18, 2020), the court stated: "[Defendant's] BOP medical records indicate that he is receiving adequate treatment for his COVID-19 infection. . . . [Defendant's] diagnosis does not warrant . . . compassionate release." *Id.* at *1, *3; *see also United States v. Bogdanoff*, 459 F. Supp. 3d 653, 658 (E.D. Pa. 2020) ("BOP officials are monitoring [defendant] daily[] [and] taking his temperature each day . . . . [the court] cannot yet conclude that he . . . would be made safer by his immediate [release]").

5

7. Releasing White at this time could pose a danger to public safety. See Gov't Second Opp. at 6. This finding is in line with cases which have concluded that: "Any release other than one for emergency medical care would have to await Defendant's recovery . . . . release while he is infectious would risk the public health." *United States v. Castelucci*, 2020 WL 6868673, at *1 n.2 (S.D.N.Y. Nov. 22, 2020); *United States v. Davis*, 2020 WL 2395977, at *2 (C.D. Ill. May 12, 2020).

## IV. Analysis

Leaving aside the conclusion that White's hypertension was reviewed and decided in the Court's June 29, 2020 Decision & Order (see discussion above at pp.1, 4) and that White has failed to exhaust his two new claims (see discussion above at pp.4-5), the Court concludes as it did in the Decision & Order that White is a danger to the community and that the 18 U.S.C. § 3553(a) factors weigh against his release. "The Court need not determine whether [] extraordinary circumstances exist because it denies [defendant's] motion on the separate ground that he presents a 'danger . . . to the community.'" *See United States v. Hardy*, 2020 WL 4505614, at *1 (S.D.N.Y. Aug. 4, 2020) (citation omitted). And, "[the Court] need not decide whether [defendant] has proffered [] extraordinary [circumstances] . . . upon consideration of the § 3553(a) factors." *United States v. Roney*, --- F. App'x ----, 2020 WL 6387844, at *2 (2d Cir. Nov. 2, 2020).

**Dangerousness**

The Court's "dangerousness" conclusion is based upon the following:

**First**, "[White's] involvement in the offense did not consist of a single or even several isolated transactions – drug dealing was a way of life for this defendant, who was consistently involved in trafficking heroin and cocaine throughout the course of a nearly ten-month investigation, as well as many years prior." Gov't Sentencing Submission at 3. "In one sale alone, . . . in 2016, the defendant received approximately 10 kilograms of heroin from one of his suppliers, which had a street value of more than $100,000." Id. at 1. From 2012 to 2017, "[White] was a leader of and supplier to a [Queens-based] drug trafficking organization responsible for distributing significant kilogram quantities of heroin and cocaine in the New York City area, and fueling drug traffickers who ultimately redistributed those drugs throughout

the New York City area." Id. at 3; see also PSR ¶ 8 & p.17. As the Government contended: "[White's] distribut[ion] [of] wholesale quantities of dangerous drugs in the New York City metropolitan area[] caus[ed] immeasurable harm to users and communities." Gov't Second Opp. at 7. "[H]eroin trafficking, in particular, giv[es] rise to increasing and alarming numbers of victims, including tens of thousands of overdose deaths per year." Gov't Sentencing Submission at 3. Clearly, the underlying conduct that led to White's incarceration endangered the community.

In *United States v. Batista*, 2020 WL 3249233 (S.D.N.Y. June 16, 2020), the court pointed out that the defendant was "the organizer, supervisor, and leader of a conspiracy to distribute cocaine." *Id.* at *3. "[T]the Court cannot find that [defendant] 'is not a danger to the safety of any other person or to the community' . . . . Here, the underlying conduct that led to [defendant's] incarceration . . . [involved] distributing controlled and highly addictive substances in his community." *Id.* (citation omitted).

In *United States v. Ortega*, 2020 WL 3402914 (S.D.N.Y. June 19, 2020), the court found that: "[defendant] played a significant role in a narcotics conspiracy that [involved] hundreds of kilograms of cocaine []. [Defendant] was a leader of the conspiracy and directed persons to smuggle cocaine . . . and [he] sold [] large quantities of cocaine." *Id.* at *3; *see also United States v. Miller*, 2020 WL 5259065, at *5 (D. Conn. Sept. 2, 2020) (where "[defendant] was a leader in the . . . sale of large quantities of heroin and crack cocaine," the court concluded that it could not find "that [defendant's] early release would not pose a danger to the community").

**Second**, according to the Government, "White's criminal history . . . reflects that he has spent most of his adult life participating in drug trafficking." *White*, 2020 WL 3545513, at *2 (citation and alterations omitted); see also Gov't Second Opp. at 7. White's criminal record includes a prior drug felony. That is, in 2000, he was convicted of second-degree criminal sale of a controlled substance, which carried a sentence of 3 years' to life imprisonment. See PSR ¶ 25. White's 2000 conviction and sentence was based on his role "as one of the leaders of a drug trafficking organization that sold more than $8,000 worth of crack cocaine and heroin each day in the South Jamaica Houses in Queens." See Gov't Second Opp. at 7.

7

In *United States v. Mazyck*, 2020 WL 5517540 (S.D.N.Y. Sept. 12, 2020), the court denied compassionate release to a defendant who had "acted as a manager for . . . [a drug trafficking] organization that distributed huge amounts of crack cocaine and heroin." *Id.* at *3. The court found that: "[c]onvictions[] [and] periods of incarceration . . . were not sufficient to deter him from returning to drug trafficking." *Id.* at *6.

In *United States v. Rosa*, 2020 WL 5774909 (S.D.N.Y. Sept. 28, 2020), the court denied compassionate release to a defendant who "was convicted of narcotics trafficking in 1988 and sentenced to 74 months' imprisonment." *Id.* at *2. The court found that: "Apparently, that sentence did not instill respect for the law. . . . [Defendant's] prior criminal history . . . demonstrate[s] that he would be a danger to his community." *Id.*

### The 18 U.S.C. § 3553(a) Factors Weigh Against White's Release

A sentence reduction would be inconsistent with the goals of sentencing, which include: "The need for the sentence to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the defendant's crimes; [] [t]he need for the sentence to afford adequate deterrence to comparable criminal conduct; [and] [t]he need for the sentence to protect the public from further crimes by the defendant." *See United States v. Rice*, 2020 WL 4505813, at *4 (S.D.N.Y. Aug. 5, 2020).

**First**, reducing White's sentence to time served (which would amount to less than one-third of his 130-month sentence) would not reflect the seriousness of his offense, promote respect for the law, or provide just punishment. At sentencing, the Court stated that the 130-month sentence was appropriate "particularly given the seriousness of the offense. By that I mean the distribution of cocaine and heroin to the community. Related thereto it is needed to promote respect for the law and I think it does provide a just punishment." See Dec. 17, 2018 Sentencing Tr. at 20:8-11.

In *United States v. Zubiate*, 2020 WL 3127881 (S.D.N.Y. June 12, 2020), the court found that: "the underlying conduct here was very serious. [Defendant] was engaged in a substantial narcotics business, trafficking in large quantities of heroin . . . as well as cocaine." *Id.* at *3. "[T]he extremely dangerous

8

nature of the drugs Defendant was trafficking warranted a serious and substantial punishment in order to . . . . reflect the seriousness of the offense, promote respect for the law, . . . and to provide just punishment for the offense." *Id.* (citation omitted).

In *United States v. Davis*, 2020 WL 4573029 (S.D.N.Y. Aug. 7, 2020), the court noted that: "[Defendant] participated in a massive drug-trafficking organization that distributed . . . cocaine throughout New York City." *Id.* at *2. "[Defendant's] sentence was a substantial downward variance from the [] Guidelines [range] of 188 to 235 months' imprisonment. Given the seriousness of [defendant's] conduct . . . the Court cannot conclude that the section 3553(a) factors would support a [further] reduction of [defendant's already] below-Guidelines sentence." *Id.* (citations and quotation marks omitted).

And, in *United States v. Leon*, 2020 WL 7093445 (S.D.N.Y. Dec. 4, 2020), the court denied the compassionate release motion of a defendant who "directly participated in the distribution of hundreds of thousands of dollars' worth of heroin[] [and] cocaine . . . – drugs that actually kill people every day." *Id.* at *1. The court held that: "nothing has changed to warrant cutting [defendant's] sentence by more than two-thirds. . . . The serious nature of [defendant's] offense warranted a lengthy prison sentence at the time it was imposed . . . . [and] promote[d] respect for the law and provide[d] just punishment for the offense." *Id.* at *2; *see also United States v. Francisco-Ovalle*, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) (where "Defendant[] participat[ed] in a conspiracy to distribute significant quantities of cocaine and heroin – and h[ad] high-level responsibilities in that conspiracy – . . . a sentence reduction . . . would [not] adequately account for the seriousness of the Defendant's offense").

**Second**, as previously noted, White "has spent most of his adult life participating in drug trafficking." *White*, 2020 WL 3545513, at *2 (citation omitted). His criminal history category is II. See PSR ¶ 26. He was previously convicted of and incarcerated for a drug offense resulting from his leadership role in another drug trafficking organization. See discussion at p.7, supra. Releasing White now would not afford adequate specific or general deterrence to criminal conduct.

9

In *United States v. Mojica*, 2020 WL 6746478 (S.D.N.Y. Nov. 16, 2020), the court noted that "[t]he instant offense was Defendant's second [] felony conviction. A previous [] sentence did not deter him." *Id.* at *2. The court concluded that: "Releasing Defendant . . . . would insufficiently deter." *Id.*

In *United States v. Vasquez*, 2020 WL 5038006 (S.D.N.Y. Aug. 26, 2020), the court found that: "[defendant's] criminal history reflects unceasing involvement in narcotics trafficking and distribution [], behavior that prior terms of incarceration did nothing to deter." *Id.* at *3. The court concluded that: "[defendant's] criminal history, in conjunction with section 3553(a)'s command that 'the sentence imposed . . . afford adequate deterrence,' militates against a sentence modification." *Id.* (citation omitted).

**Third**, a substantial sentence reduction as proposed by White (which would amount to a 42-month sentence, or less than one-third of his initially imposed 130-month sentence) would not sufficiently protect the public from further crimes of White.

In *United States v. Francis*, 2020 WL 7247180 (S.D.N.Y. Dec. 9, 2020), the court found that given "the extent of [defendant's] drug dealing [and] his history of . . . drug offenses, . . . releasing Defendant now . . . [would not] suffice to protect the public from further crimes by Defendant, unfortunately a distinct possibility given the Defendant's record." *Id.* at *2.

And, in *United States v. Marley*, 2020 WL 7768406 (S.D.N.Y. Dec. 30, 2020), the court observed that the defendant was "'the manager/supervisor' of a significant drug trafficking conspiracy [involving] . . . heroin[] [and] cocaine." *Id.* at *3. The court concluded that: "Reducing [defendant's] sentence to time served would [] result in an exceptionally large sentence reduction, with [defendant] serving only approximately one-third of the originally-imposed sentence. [The proposed] sentence . . . is woefully inadequate . . . to protect the public from [defendant's] further criminal conduct." *Id.*

V.   **Conclusion & Order**

For the reasons set forth above, Defendant's Second Motion for Compassionate Release [Dck. # 121] is denied.

The Defendant's Emergency Motion for Bail Pending Resolution of the Second Motion for Compassionate Release [Dck. # 127] is denied as moot. *See United States v. Bush*, 2021 WL 199618, at *2 (S.D.N.Y. Jan. 20, 2021) ("[defendant's] renewed motion for compassionate release is denied . . . [defendant's] 'emergency motion for bail' pending the Court's resolution of the Renewed Motion is denied as moot"(citation omitted)).

Dated: New York, New York
January 29, 2021

_____
**RICHARD M. BERMAN, U.S.D.J.**